# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON REMAND

---

## NO. 03-21-00650-CV

---

**Texas Right to Life and John Seago, Appellants**

**v.**

**Allison Van Stean; Planned Parenthood of Greater Texas Surgical Health Services; Planned Parenthood South Texas Surgical Center; Planned Parenthood Center for Choice; Bhavik Kumar, M.D; North Texas Equal Access Fund; Lilith Fund for Reproductive Equity, Inc.; The Afiya Center; Fund Texas Choice; West Fund; Frontera Fund; Clinic Access Support Network; The Bridge Collective; Monica Faulkner; Michelle Tuegel; Ghazaleh Moayedi, D.O.; and Jane Doe, Appellees**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-004179, THE HONORABLE DAVID PEEPLES, JUDGE PRESIDING

---

## O P I N I O N

This case returns to us on remand from the Texas Supreme Court for this Court to determine whether the appellees ("Planned Parenthood and Van Stean appellees") have standing to maintain their suit, which challenges the constitutionality of the Texas Heartbeat Act, also known as Senate Bill 8 or SB 8, and seeks to enjoin appellants Texas Right to Life and John Seago (collectively, Texas Right to Life) from enforcing the Act.[1] *See Texas Right to Life v. Van*

---

[1] The underlying multidistrict-litigation (MDL) proceeding consists of fourteen cases. One case was filed by Planned Parenthood of Greater Texas Surgical Health Services; Planned Parenthood South Texas Surgical Center; Planned Parenthood Center for Choice; and Bhavik Kumar, M.D (collectively, "Planned Parenthood appellees"). Counsel for the other thirteen

*Stean* (*Texas Right to Life II*), 702 S.W.3d 348, 357 (Tex. 2024) (per curiam) (reversing and remanding *Texas Right to Life v. Van Stean* (*Texas Right to Life I*), 704 S.W.3d 6 (Tex. App.—Austin 2023) (mem. op.)). The Act prohibits a physician in Texas from providing an abortion after the detection of cardiac activity within the gestational sac. *See* Tex. Health & Safety Code § 171.204(a); *see also id.* § 171.201(1), (3) (defining terms); *see generally id.* §§ 171.201-.212.

For the reasons explained below, we hold that the Planned Parenthood and Van Stean appellees have standing to maintain their suit. Because we conclude that the appellees have standing and their case is justiciable, we also address the merits of Texas Right to Life's challenge to the trial court's order denying Texas Right to Life's motion to dismiss brought under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011; *see also Texas Right to Life II*, 702 S.W.3d at 357 (directing this Court to address merits of TCPA motion to dismiss if we determine appellees' case is justiciable). We conclude that the TCPA does not apply to the Planned Parenthood and Van Stean appellees' claims, and we affirm the MDL court's denial of Texas Right to Life's motion to dismiss. *See Texas Right to Life I*, 704 S.W.3d at 16.

## BACKGROUND

In 2021, the Texas Legislature enacted SB 8, which added Subchapter H to Chapter 171 of the Texas Health and Safety Code. *See* Act of May 13, 2021, 87th Leg., R.S., ch. 62, 2021 Tex. Gen. Laws (codified at Tex. Health & Safety Code §§ 171.201-.212). SB 8

appellees (collectively, the "Van Stean appellees") filed separate suits for each of their clients. The cases were ultimately transferred to a pretrial court ("MDL court") for coordinated proceedings. *See* Tex. R. Jud. Admin. 13 (establishing procedures for multidistrict litigation).

2

took effect on September 1, 2021. SB 8 created a unique statutory enforcement scheme. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2496 (2021) (order denying injunctive relief) (Roberts, C.J., dissenting) (describing SB 8 as "statutory scheme" that "is not only unusual, but unprecedented"). It does not impose criminal sanctions or administrative penalties on those who violate the statute, and it specifically prohibits state officials from enforcing the law. *See* Tex. Health & Safety Code § 171.207(a). Instead, SB 8 authorizes enforcement of the law only by private citizens through civil litigation. *Id.* § 171.208(a); *see also id.* § 171.207(a) ("[T]he requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208."). Section 171.208 provides as follows:

> (a) Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person who:
>
> (1) performs or induces an abortion in violation of this subchapter;
>
> (2) knowingly engages in conduct that aids or abets the performance or inducement of an abortion, including paying for or reimbursing the costs of an abortion through insurance or otherwise, if the abortion is performed or induced in violation of this subchapter, regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter; or
>
> (3) intends to engage in the conduct described by Subdivision (1) or (2).

*Id.* § 171.208(a). Section 171.208(b) establishes the relief that must be awarded to a successful private enforcer of the statute:

> (b) If a claimant prevails in an action brought under this section, the court shall award:
>
> (1) injunctive relief sufficient to prevent the defendant from violating this subchapter or engaging in acts that aid or abet violations of this subchapter;

3

> (2) statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter, and for each abortion performed or induced in violation of this subchapter that the defendant aided or abetted; and
>
> (3) costs and attorney's fees.

*Id.* § 171.208(b).

In September 2021, fourteen lawsuits were filed against Texas Right to Life and Seago challenging the constitutionality of SB 8 and seeking declaratory and injunctive relief from its enforcement against the plaintiffs. *See generally* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Uniform Declaratory Judgments Act (UDJA)). At the time the lawsuits were filed, Texas Right to Life described itself on its website as "the oldest, largest, and only statewide Pro-Life organization in Texas," and John Seago was its legislative director. One case was filed by the Planned Parenthood appellees; the other thirteen were filed by the Van Stean appellees, who are organizations and individuals involved in different aspects of providing abortions in Texas.

In their petitions, all the appellees challenged the private civil enforcement scheme created by SB 8. The Van Stean appellees alleged that SB 8 "was purposefully and improperly designed to try to insulate it from any judicial review, usurping both the executive function by deputizing private citizens who oppose abortion to enforce the law (rather than public officials), and supplanting the judiciary's function by depriving citizens of avenues for challenging an unconstitutional law, based solely on the content of the claims they would

4

bring."[2] *See Whole Woman's Health*, 141 S. Ct. at 2496 (Roberts, C.J., dissenting) ("The desired consequence appears to be to insulate the State from responsibility for implementing and enforcing the regulatory regime.").

Soon after the suits were filed, Texas Right to Life filed a motion with the judicial panel on multidistrict litigation ("MDL Panel") to transfer the fourteen cases to a pretrial court as allowed by Rule 13.3 of the Rules of Judicial Administration. In October 2021, the MDL Panel appointed the Honorable David Peeples to serve as the pretrial judge for the fourteen cases.

Texas Right to Life challenged the Planned Parenthood and Van Stean appellees' standing to bring their claims in a plea to the jurisdiction, a TCPA motion to dismiss, and in Texas Right to Life's responses to summary-judgment motions filed by appellees. In November 2021, the MDL court heard argument on Texas Right to Life's plea to the jurisdiction, its TCPA motion to dismiss, and the Planned Parenthood and Van Stean appellees' summary-judgment motions. On December 9, 2021, the MDL court signed an order denying both Texas Right to Life's plea to the jurisdiction and its TCPA motion to dismiss, thereby asserting subject-matter jurisdiction over the case. In the same order, the MDL court granted in part and denied in part the Planned Parenthood and Van Stean appellees' summary-judgment motions. As part of its summary-judgment ruling, it declared Section 171.208(a) and (b) unconstitutional for three separate and independent reasons. The MDL court denied the appellees' request for summary judgment granting a permanent injunction to prevent Texas Right to Life from encouraging the filing of SB 8 lawsuits, reserving that issue for trial on the merits, along with some other arguments about SB 8's constitutionality.

---

[2] The Planned Parenthood appellees similarly alleged that "[t]he transparent purpose of S.B. 8's enforcement scheme is to make it so that abortion providers and people who assist with abortions cannot sue government officials for an injunction to block the law's enforcement."

After summarizing the rulings made in its forty-eight-page order and identifying issues that remained pending, the MDL court stated its intent to sign an order of severance so that all the issues addressed in its order would be immediately appealable. However, Texas Right to Life filed its notice of appeal from the denial of its TCPA motion to dismiss—the only ruling in the trial court's order from which an interlocutory appeal is permitted—almost immediately after the trial court's order was signed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing interlocutory appeal of order denying TCPA motion to dismiss).

## ANALYSIS

### Justiciability of Appellees' Claims

### I.      Standard of review

The Texas Supreme Court has instructed us to address the jurisdictional issue of standing, which Texas Right to Life raised in both its plea to the jurisdiction and TCPA motion to dismiss.[3] Although the trial court's denial of the plea to the jurisdiction is not an appealable interlocutory order, because Texas Right to Life filed a proper interlocutory appeal from the denial of the TCPA motion, we must address jurisdiction before addressing the merits of that appealable interlocutory order. *Texas Right to Life II*, 702 S.W.3d at 355-56 (stating that because subject-matter jurisdiction can be raised at any time, "[i]t follows that jurisdiction must be addressed in a properly filed interlocutory appeal, regardless of the order appealed"). The Texas Supreme Court pointed out that Texas Right to Life incorrectly framed the standing issue by presenting standing as an element of the Planned Parenthood and Van Stean appellees' claims

---

[3] Texas Right to Life also addressed standing in its response to the appellees' summary-judgment motions. To the extent necessary, we have considered the summary-judgment evidence presented in support of the jurisdictional issues.

6

and arguing that the appellees had to produce clear-and-specific evidence of standing to survive the TCPA motion to dismiss. *Id.* at 354. Instead, the court explained, because the absence of subject-matter jurisdiction may be raised by procedural vehicles other than a plea to the jurisdiction, *see Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), and it is the jurisdictional nature of the pleading, not its title, that matters, *e.g.*, *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (treating summary-judgment motion as plea to the jurisdiction for purposes of appellate jurisdiction), we must treat the substance of the appealable order as a plea to the jurisdiction and address it before reaching the TCPA merits. *Texas Right to Life II*, 702 S.W.3d at 354-355. Accordingly, we will apply the standard of review used for jurisdictional challenges raised in a plea to the jurisdiction to analyze the standing challenge raised by Texas Right to Life in its TCPA motion to dismiss.[4] *See, e.g.*, *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) ("Because standing is a component of subject[-]matter jurisdiction, we consider [standing issues] as we would a plea to the jurisdiction." (alterations in original) (quoting *Brown v. Todd*, 53 S.W.3d 297, 305 n.3 (Tex. 2001))).

The burden is on the plaintiffs to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). We look to the pleadings to determine if the plaintiffs have "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in the plaintiffs' favor, taking them as true, and looking to the plaintiffs' intent. *Miranda*, 133 S.W.3d at 226. When the jurisdictional

---

[4] We note that Texas Right to Life made substantially similar standing arguments and relied upon substantially similar evidence supporting those arguments in its plea to the jurisdiction, TCPA motion to dismiss, and response to the appellees' summary-judgment motions.

7

challenge may be determined solely from the pleadings, we review that determination de novo. *Id.*

When the defendants challenge the existence of the pleaded jurisdictional facts with supporting evidence (as opposed to challenging only the pleadings), as Texas Right to Life does here, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id.* at 227. These evidentiary challenges fall into two categories, which courts treat "in markedly different ways." *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.).

One category of cases involves jurisdictional facts that implicate the merits of the plaintiff's case. *Id.* at 807. In those cases, the trial court rules on the jurisdictional challenge as a matter of law if the defendant has satisfied an evidentiary burden similar to a summary-judgment movant's burden and conclusively negated the plaintiffs' jurisdictional facts, which we would otherwise assume to be true. *Id.*; *see also Miranda*, 133 S.W.3d at 227-28 ("[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law."). We review the trial court's legal determination in this type of case de novo, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Poindexter*, 306 S.W.3d at 807.

In the other category of case, "the jurisdictional issue or facts do not substantially implicate the merits of the plaintiff's case, but rather are, for the most part, separate and distinct from the merits." *Id.* at 806. In this type of case, "the fact issue may be resolved by the trial court when resolving the jurisdictional issue, and its explicit or implicit fact finding (or failure-to-find) may be challenged in the same manner as fact findings generally." *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.); *see also Vernco*,

8

460 S.W.3d at 149 ("When a jurisdictional issue is not intertwined with the merits of the claims, which is the case here, disputed fact issues are resolved by the court, not the jury.").

"Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon*, 411 S.W.3d at 171. This ultimate inquiry—whether the court has subject-matter jurisdiction—is a question of law, which we review de novo. *Id.* (citing *Miranda*, 133 S.W.3d at 226).

Although the Van Stean appellees urge us to apply the standard of review for cases in which the jurisdictional inquiry implicates the merits, we conclude that this case is not one where "many if not most of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits of her case." *Poindexter*, 306 S.W.3d at 807. In their suit, the Van Stean and Planned Parenthood appellees challenge the constitutionality of SB 8 and seek to enjoin Texas Right to Life from enforcing it. In its jurisdictional challenge, Texas Right to Life asserts that the appellees cannot establish the three traditional elements required for standing. *See, e.g.*, *Heckman*, 369 S.W.3d at 154-55 (identifying standing elements of injury in fact, traceability, and redressability).

First, Texas Right to Life argues that the appellees lack standing because it is impossible for the appellees to aid or abet abortions that violate the Act because no such abortions are being performed, and therefore, Texas Right to Life will not sue them under the Act—allegations that the appellees have not shown an injury in fact. Second, Texas Right to Life asserts that the appellees cannot establish that any alleged injury is traceable to Texas Right to Life. Third, Texas Right to Life contends that the appellees' alleged injury will not be redressed by a favorable decision. Our resolution of Texas Right to Life's challenge to the Van

9

Stean and Planned Parenthood appellees' alleged jurisdictional facts will not determine whether the appellees are entitled to relief on their challenge to the constitutionality of SB 8.

Accordingly, on appeal, rather than presuming that the MDL court concluded that fact issues existed regarding the jurisdictional issues, which precluded its granting Texas Right to Life's jurisdictional challenge, we will presume that the MDL court resolved any fact issues in the appellees' favor when resolving the jurisdictional issues, and we will assess whether Texas Right to Life has successfully challenged the MDL court's explicit and implicit fact findings. With these principles in mind, we turn first to standing, then to the other jurisdictional defects asserted by Texas Right to Life. *See Texas Right to Life II*, 702 S.W.3d at 357 (directing this Court to consider whether the case is justiciable "because the plaintiffs had standing and because there is no other jurisdictional defect").

## II. Standing

"Standing is a constitutional prerequisite to maintaining suit." *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993) (explaining standing requirement stems from two constitutional limitations on subject-matter jurisdiction—separation-of-powers doctrine, which prohibits advisory opinions, and open-courts provision, which contemplates access to courts only for litigants suffering injury). Standing requires plaintiffs to demonstrate that they possess an interest in a conflict distinct from that of the general public, such that the complained-of actions have caused them some particular injury. *See Williams v. Lara*, 52 S.W.3d 171, 178-79 (Tex. 2001) (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)

("Standing consists of some interest peculiar to persons individually and not as members of the general public.")).

"Generally, standing involves a threshold determination of whether a plaintiff has a sufficient 'justiciable interest' in the suit's outcome to be entitled to a judicial determination." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Absent standing, a court lacks subject-matter jurisdiction over the suit, "and the merits of the plaintiff's claims thus cannot be litigated or decided." *Id.*; *see also Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("The standing doctrine identifies those suits appropriate for judicial resolution."). Thus, our analysis of whether the Planned Parenthood and Van Stean appellees have standing is not a decision about whether they "will prevail in their suit; it is about whether they may bring it in the first place." *In re H.S.*, 550 S.W.3d at 155.

Texas has adopted the federal requirements for standing set forth by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *See Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (citing *Heckman*, 369 S.W.3d at 154-55). To maintain standing, a plaintiff must show (1) that it has suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Heckman*, 369 S.W.3d at 154-55 (citing *Lujan*, 504 U.S. at 560-61). The "threshold inquiry into standing 'in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal.'" *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011) (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

11

The MDL court held that the Planned Parenthood and Van Stean appellees "have shown 'injury in fact,' traced to [Texas Right to Life's] conduct." It further held that the appellees "do not have to show that a declaratory judgment or injunction would remedy their situation *entirely*" to show redressability, noting that "[i]t would be impossible to sue and enjoin every adult in Texas or in the United States." The MDL court concluded that the appellees "are entitled to bring this pre-enforcement challenge to SB 8's constitutionality." We assess the appellees' allegations in their pleadings and the evidence presented by the parties on the jurisdictional facts for each element of standing to determine whether the appellees established that the trial court has subject-matter jurisdiction over the case.

A.     **Injury in fact**

Texas Right to Life argues that the Planned Parenthood and Van Stean appellees cannot establish standing because "every Texas abortion provider is complying with Senate Bill 8," and therefore, "it is impossible for [them] to 'aid or abet' post-heartbeat abortions in Texas, as no such abortions are being performed."[5] The injury in fact alleged by the Planned Parenthood and Van Stean appellees, as described by the Van Stean appellees, is "the threat of SB8 lawsuits preventing [appellees] from performing or assisting with prohibited abortions."[6]

---

[5] We note that Texas Right to Life acknowledges in its reply brief that "[t]he plaintiffs are assuredly suffering injury in fact, as they can no longer perform or assist post-heartbeat abortions in the state of Texas. . . . [T]he plaintiffs are suffering injury because they must either comply with SB 8 or face an endless barrage of lawsuits." Despite this concession, we nevertheless must assess the sufficiency of the Planned Parenthood and Van Stean appellees' allegations of injury in fact as part of our de novo review of their standing. *See Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) ("[S]tanding as an issue cannot be waived . . . .").

[6] Each of the Van Stean appellees makes similar allegations in their individual petitions about SB 8's interference with their specific individual activities and about Texas Right to Life's

The Planned Parenthood appellees, three nonprofit corporations and a doctor who provide medication and procedural abortions, similarly assert that "the MDL court correctly concluded that the Planned Parenthood [appellees] are suffering an injury in fact based on S.B. 8's impact on their ability to provide abortion, their ability to engage in activities that would constitute aiding and abetting under the Act, and their exposure to potentially unlimited S.B. 8 litigations." The Planned Parenthood appellees point out that "this injury is not just threatened; it has already occurred and is ongoing."

As the Planned Parenthood appellees alleged in their petition, filed the day after SB 8 took effect, they face a credible threat of enforcement from Texas Right to Life based on the efforts Texas Right to Life had already begun to enforce the SB 8 ban, including

---

threatened enforcement of SB 8.  Six of the Van Stean appellees are nonprofit organizations that provide funding to assist Texans who seek abortions.  Five of them fund abortion services: The North Texas Equal Access Fund (funding and emotional support for low-income abortion patients); Lilith Fund for Reproductive Equity, Inc. (financial, emotional, and logistical support for low-income abortion patients); The Afiya Center (financial, emotional, and logistical support for low-income Black abortion patients); West Fund (direct and supportive funding for abortion services); and Frontera Fund (financial and practical support for abortions and policy advocacy). Fund Texas Choice provides funds and logistical support for related needs, such as lodging, travel, and childcare, and helps them identify nonprofits that provide financial subsidies for abortions.

The Bridge Collective and Clinic Access Support Network are nonprofit volunteer organizations that provide practical support to Texans seeking abortions.  The Bridge Collective provides information, transportation, and accommodations for people seeking abortions in Central Texas, while the Clinic Access Support Network provides transportation, meal stipends, accommodations, dependent-care assistance, and compassionate care to people seeking abortions in the Houston and Southeast Texas area.

Monica Faulkner (a licensed social worker and professor who works with victims of sexual violence and child abuse), Michelle Tuegel (an attorney who works with victims of sexual assault and abuse and donates to organizations that fund and supports abortions), and Dr. Ghazeleh Moayedi (an obstetrician gynecologist) provide professional counsel and advice to Texans in need of abortions.  Dr. Moayedi is also a provider of abortion care in Texas.  Jane Doe is a survivor of sexual assault and abuse who counsels other survivors, including providing information about abortions.  Allison Van Stean is an attorney who publicly advocates for abortion access and donates to nonprofit organizations that help Texans access abortion.

13

by announcing their intention to sue abortion providers and others who they believe are violating the ban and by launching a "whistleblower" website recruiting a network of additional enforcers willing to bring such suits, and/or to act as anonymous informants providing evidence of supposed S.B. 8 violations (again to be used in suits enforcing S.B. 8's unconstitutional ban).

Each of the Van Stean appellees similarly alleged in their petitions that Texas Right to Life, at the time of the petitions' filing, had been coordinating and organizing efforts to sue, and planning to sue, individuals and groups that they perceive to be violating or intending to violate SB 8. As Van Stean and other appellees alleged in their petitions, "the threat of unmitigated potential civil liability . . . is imminent because citizen bounty hunters are already publicly organizing to file lawsuits under SB8."

All the appellees attached to their petitions a declaration filed by Seago in another lawsuit confirming that he and Texas Right to Life were publicizing the availability of private enforcement lawsuits under SB 8 and that he had "personal knowledge" of "several individuals who intend to sue the abortion-provider plaintiffs and the abortion-fund plaintiffs if they defy Senate Bill 8, and those individuals will sue the plaintiffs for violating Senate Bill 8." All appellees also attached to their petitions screenshots of Texas Right to Life's website encouraging private enforcement and reporting of possible defendants for SB 8 lawsuits. The website page invites visitors to submit anonymous tips or information on potential violators of SB 8 and provides buttons to do so. The Planned Parenthood appellees also attached screenshots of Texas Right to Life's response to recruits who click on the buttons. Those who click on the button inviting them to become a "team member" are invited to identify how they want to enforce the Act, with response options of "Litigating[,] Plaintiff[,] Data Collection [, and] other." They are asked to provide the best time for a Texas Right to Life team member to call them to

14

talk about enforcing the Act. Those who click on the button to provide an anonymous tip or information about potential SB 8 violations are asked to provide "as much detail as possible" on "how [they] think the law has been violated," as well as "how [they] obtain[ed] this evidence" and to whom the evidence relates. Both sets of appellees provided statistics about how many times the website had been visited at the time of their petitions' filings. As one example, at the time the Planned Parenthood suit was filed, the Planned Parenthood appellees alleged that the Texas Right to Life website had been visited at least 2,600 times on Facebook; 1,626 times on Twitter; 3,733 times on Reddit; and 2,787 times by email.

We conclude that all the appellees have sufficiently alleged in their pleadings an injury in fact—threatened litigation by Texas Right to Life—that is concrete and particularized and actual and imminent.

### B. Traceability of injury to Texas Right to Life's conduct

Texas Right to Life asserts that although the Planned Parenthood and Van Stean appellees have established injury in fact, they cannot establish the traceability of their injuries to any unlawful conduct by Texas Right to Life.

### 1. Texas Right to Life's declarations do not defeat standing

Texas Right to Life contends that the declarations that both it and Seago submitted defeat any possibility of standing under *Whole Women's Health v. Jackson*, 595 U.S. 30 (2021). In *Whole Women's Health*, the United States Supreme Court held that the healthcare providers who filed a pre-enforcement action in federal court challenging SB 8's constitutionality lacked standing to sue a private citizen who submitted a declaration attesting that "he possesses no intention to file an S. B. 8 suit against them." 595 U.S. at 48; *see also id.* at

15

46-48 (holding that providers' suit against other defendants was not barred by sovereign immunity at motion-to-dismiss stage). The providers did not contest the private citizen's testimony or ask the Supreme Court to disregard it, and accordingly, the court determined on the record before it that they could not "establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.'" *Id.* (alteration in original) (quoting *California* v. *Texas*, 593 U.S. 659, 674 (2021)).

The declarations submitted by Texas Right to Life and Seago do not have the same effect here. Specifically, in her declaration, Texas Right to Life's general counsel stated,

> Texas Right to Life will not sue any person or entity that is complying with Senate Bill 8. *We would consider suing only individuals or entities that are violating the law by performing or inducing a post-heartbeat abortion, or by aiding or abetting an illegal abortion of that sort, and only if we have credible information to support such a lawsuit.*
>
> . . . .
>
> Texas Right to Life has never been involved in "organizing" or "planning" lawsuits against any of these plaintiffs, as they claim in their petitions. Nor has Texas Right to Life ever "threatened actions of bringing lawsuit after lawsuit against [them]." And Texas Right to Life has not acted and has no intention of acting in concert with anyone who does any of those things, *so long as the plaintiff abortion providers and abortion funds continue to comply with Senate Bill 8 (as we expect them to do).*[7]

(Emphases added.) Although Texas Right to Life argues that the declarations "disavow any intention to sue the plaintiffs under SB 8, and . . . disclaim any intent to sue that might have existed when the original petitions were filed," Texas Right to Life and Seago did not disavow any intent to pursue enforcement against the appellees should they violate SB 8 or be perceived

---

[7] The quoted language is contained in the general counsel's declaration submitted with Texas Right to Life's summary-judgment response. The general counsel's declaration submitted with Texas Right to Life's TCPA motion to dismiss contains only the first quoted paragraph.

16

to do so. In other words, Texas Right to Life and Seago failed to unequivocally attest that they would not sue the appellees were they to engage in conduct that violates SB 8—they stated only that they had no intention to do so because the appellees were complying with SB 8 at the time of the suit and further stated that they will not do so while the appellees are complying with SB 8. But the very injury complained of by the Planned Parenthood and Van Stean appellees is the chilling effect that the threat of litigation for violations or perceived violations poses to their day-to-day operations, activities, and professions. Stating "we won't sue you as long as you obey the law" is still a threat of litigation.

At the time of suit, the jurisdictional evidence showed that Texas Right to Life and Seago were publicizing the availability of private enforcement suits under the Act and seeking reports of violations of the Act. On a webpage titled "Getting Involved," the Texas Right to Life website explained that SB 8's "enforcement is in the hands of private citizens" and that the "Act calls upon citizens to hold abortionists accountable." It explained that "[a]ny Texan can bring a lawsuit" against someone violating the Act. The page also had spots to click on to "[j]oin the team of Pro-Lifers working to enforce the Texas Heartbeat Act" and to "[s]end an anonymous tip or information about potential violations of the Texas Heartbeat Act." The Planned Parenthood and Van Stean appellees' injury—the constraint placed on their activities by the threat of unlimited litigation—is traceable to Texas Right to Life's active solicitation of both private citizens to "join the team" to enforce the Act and information about potential violations of the Act.

Texas Right to Life also argues that the Planned Parenthood and Van Stean appellees' injuries are traceable only to SB 8's existence, arguing that in the absence of Texas Right to Life, they would still be suffering the same injuries "because they would face an endless

17

barrage of lawsuits" if they violated the Act. But for purposes of standing, the appellees' injuries need only be "fairly traceable" to Texas Right to Life's conduct; there is no requirement that Texas Right to Life's conduct be the only cause of the injury. *See Leibman v. Waldroup*, 715 S.W.3d 367, 371 (Tex. 2025) (noting that traceability requires plaintiff to show causal connection between injury and defendant's alleged conduct). As Seago stated to CNN in an article attached as an exhibit to Planned Parenthood's summary-judgment motion,

> "This whole mechanism only works if there is a credible threat of lawsuits being brought against an industry if they decide to ignore the law," said John Seago, the legislative director for Texas Right to Life, which advocated prominently for the abortion ban. "So, we have been working to make sure that all those pieces are in place, that if we do have reports, that we do see evidence that they're violating the law, then we can actually enforce the law ourselves."

Under the applicable standard of review, we take the plaintiffs' jurisdictional allegations as true unless the defendants' jurisdictional evidence conclusively negates them. We hold that the Texas Right to Life and Seago declarations are not sufficient to conclusively establish that the Planned Parenthood and Van Stean appellees lack an injury traceable to the conduct of Texas Right to Life and Seago. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (setting forth no-evidence standard of review that applies when appellant challenges legal sufficiency of evidence supporting factfinder's determination of issue for which appellant does not bear burden of proof); *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016) (stating in same procedural posture that when factual sufficiency is challenged, after court of appeals considers and weighs all evidence in record pertinent to finding, it sets aside finding only if it determines that credible evidence supporting the finding is so weak or so contrary to the overwhelming weight of all the evidence that finding should be set aside).

18

### 2. Texas Right to Life's conduct is actionable

Texas Right to Life also asserts on appeal that the Planned Parenthood and Van Stean appellees cannot show that their injuries are fairly traceable to Texas Right to Life's allegedly unlawful conduct because Texas Right to Life has done nothing unlawful. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) ("Texas's standing test parallels the federal test for Article III standing: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *Heckman v. Williamson County*, 369 S.W.3d 137, 153 (Tex. 2012))). Texas Right to Life contends that all the conduct described in the appellees' pleadings is constitutionally protected speech, but this contention mischaracterizes the appellees' pleadings. The appellees challenge the constitutionality of SB 8 and seek to enjoin Texas Right to Life from enforcing an unconstitutional statute, not to stop Texas Right to Life from any lawful activity, including constitutionally protected speech.

Texas Right to Life further contends that the Planned Parenthood and Van Stean appellees cannot sue it and Seago to challenge the constitutionality of SB 8 because "that is a grievance with the legislature (and legislators) that enacted the statute." Texas Right to Life relatedly argued in its plea to the jurisdiction that the trial court lacked jurisdiction to hear constitutional challenges against them because they are private individuals who are not state actors. We disagree. In this novel situation, where the Texas Legislature delegated enforcement of violations of the Act, punishable by substantial civil fines, to private citizens, for purposes of determining the parties' "rights, status, and legal relations" under the Act, private citizens who are threatening such enforcement are the appropriate parties to sue. Tex. Civ. Prac. & Rem.

Code § 37.004(a); *cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("A plaintiff must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.").

The law is clear that litigants are not required to expose themselves to penalties before seeking relief to prevent the enforcement of a statute by governmental actors: "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt*, 442 U.S. at 298 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)). We see no reason why the same principle should not apply when the enforcement of the statute has been delegated by the state to private citizens. Under the state-action doctrine, "state action is required before a litigant can maintain a claim for deprivation of a right secured by the free speech, equal rights, and due course of law guarantees of the Texas Bill of Rights." *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 91 (Tex. 1997). "Generally, state action is only present for otherwise private conduct when the conduct can be fairly attributed to the government." *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)). SB 8's "statutory scheme" "is not only unusual, but unprecedented" because the state has "essentially delegated enforcement of that prohibition [on abortion] to the populace at large." *Whole Woman's Health*, 141 S. Ct. at 2496. We conclude that under this unprecedented statutory scheme, Texas Right to Life's private conduct "can be fairly attributed to the government," for purposes of the appellees' constitutional challenge. *See Dietz*, 940 S.W.2d at 91. Accordingly, we hold that the appellees have established an imminent threat of injury traceable to the threatened conduct of Texas Right to Life and Seago as private citizens enforcing state law, which suffices to establish that the plaintiffs' suit for deprivation of Texas constitutional rights is a justiciable controversy. *See id.* ("[T]he ultimate determination of

20

whether the facts [of government involvement] are sufficient to constitute state action is a question of law.").

## C. Redressability

Texas Right to Life also challenges whether the Planned Parenthood and Van Stean appellees' alleged injuries would be redressed by either an antisuit injunction restraining Texas Right to Life from suing them or by a declaratory judgment that SB 8 is unconstitutional binding only Texas Right to Life. The redressability element of standing requires the appellees to prove that it is "likely, as opposed to merely speculative," that their alleged injury "will be redressed by a favorable decision." *See Lujan,* 504 U.S. at 560.

Texas Right to Life contends that even if the appellees obtain an antisuit injunction against them and a declaratory judgment that SB 8 is unconstitutional, the appellees will still be subject to being sued by others if they violate or are perceived to have violated the Act. The appellees, on the other hand, point out that the requested relief would resolve the live controversy between them and Texas Right to Life—which is all that is required for standing. *See Larson v. Valente,* 456 U.S. 228, 244 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury."); *see also Abbott v. G.G.E*, 463 S.W.3d 633, 649 (Tex. App.—Austin 2015, pet. denied) (concluding that declaratory relief sought was sufficient to satisfy standing's redressability requirement regardless of whether trial court additionally granted requested injunctive relief).

The appellees' requested antisuit injunction against Texas Right to Life and their requested declaratory relief that SB 8 is unconstitutional would resolve the controversy between

them and Texas Right to Life by eliminating the threat of litigation brought against them by Texas Right to Life and Seago. And although Texas Right to Life asserts that a declaration that SB 8 is unconstitutional would not preclude nonparties to this lawsuit from enforcing the Act, we disagree. They rely on a partial quotation from *Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017), to support their contention that a court's declaration that a statute is unconstitutional does not prevent other litigants from invoking it, but the Texas Supreme Court's full statement is that "[w]hen a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, *even though the government may no longer constitutionally enforce it*." *Id.* at 88 n.21 (emphasis added). In addition, the Texas Supreme Court subsequently held that a statute that has been declared unconstitutional is "'void from its inception . . . as if it had never been,'" and "is to be considered no statute at all." *Ex parte E.H.*, 602 S.W.3d 486, 494 (Tex. 2020) (quoting *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015)). In reconciling this legal principle with its statement in *Pidgeon*, the supreme court explained,

> We do not deny that laws declared unconstitutional by a court remain in the books until repealed by the legislature. Indeed, written laws do not simply vanish from existence once declared unconstitutional. But an unconstitutional law that is *factually* still in the books is nevertheless *legally* unenforceable as if it never existed at all.

*Id.* at 494 n.10. Accordingly, we conclude that the appellees' requested declaratory relief—a declaration that SB 8 is unconstitutional—would redress its alleged injury.

Therefore, because we conclude that the Planned Parenthood and Van Stean appellees have established injury in fact, traceability of their injury to Texas Right to Life, and redressability of the injury by the requested relief, we hold that they have established standing to

pursue their claims against Texas Right to Life.[8]  We next consider whether those claims are ripe.

## III.    Ripeness

Texas Right to Life also challenged the ripeness of the Planned Parenthood and Van Stean appellees' claims in the MDL court.  Texas Right to Life argued that the appellees were not able to violate the Act because no abortion providers were performing abortions in violation of the Act, and therefore, it would be impossible for Texas Right to Life to sue the appellees under the Act.  Texas Right to Life also argued that it was unknowable whether Texas Right to Life, as opposed to some other unrelated person, would sue one of the appellees if they chose to violate the Act.   Thus, Texas Right to Life argued, this case "is precisely the kind of case in which resolution of the claim presented depends on the occurrence of contingent future events that may not occur as anticipated or may not occur at all."  *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 444 (Tex. 1998).

---

[8] We note that Texas Right to Life challenges the MDL court's conclusion that only one of the plaintiffs from the 14 underlying cases needs to establish standing.  The MDL court stated that because "[t]here are multiple Plaintiffs in these consolidated cases," the rules for standing summarized in *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77-78 (Tex. 2015), and *Heckman v. Williamson County*, 369 S.W.3d 137, 152 (Tex. 2012), should apply.  Under those authorities, when multiple plaintiffs sue individually but all seek the same declaratory or injunctive relief, only one plaintiff with standing is required.  *Patel*, 469 S.W.3d at 77-78 (citing *Heckman*, 369 S.W.3d at 152 n.64).  "The reasoning is fairly simple: if one plaintiff prevails on the merits, the same prospective relief will issue regardless of the standing of the other plaintiffs."  *Id.*

Texas Right to Life contends that this rule should not apply here, asserting that even though the 14 cases were transferred to the MDL court, they remain separate actions because the MDL court has not signed a consolidation order.  A consolidation order does not appear in the clerk's record.  However, because we conclude that each appellee has established standing by adequately alleging their own injury in fact related to providing or assisting with abortions prohibited by SB 8, and the same arguments for traceability and redressability apply to all appellees, we need not resolve the issue of whether the trial court erred by examining the standing of only a few representative plaintiffs.  *See* Tex. R. App. P. 47.1.

"Ripeness, like standing, is a threshold issue that implicates subject matter jurisdiction, . . . and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented." *Id.* at 442 (citation omitted). "While standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (footnotes omitted). The ripeness doctrine addresses both the pragmatic, prudential concern of conserving judicial time and resources for real and current controversies rather than hypothetical or remote disputes and the constitutional prohibition on advisory opinions, which stems from the separation-of-powers doctrine. *Patterson*, 971 S.W.2d at 442-43.

To avoid issuing an advisory opinion, our ripeness analysis considers "whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Gibson*, 22 S.W.3d at 851-52 (quoting *Patterson*, 917 S.W.2d at 442). Thus, we focus on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Patterson*, 971 S.W.2d at 442 (quoting 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3532, at 112 (2d ed. 1984)). Ripeness does not require a claimant to show that a concrete injury has occurred, provided the claimant shows the injury is likely to occur or imminent. *Gibson,* 22 S.W.3d at 852; *Patterson,* 971 S.W.2d at 442.

As the MDL court recognized, Texas Right to Life's "filings in this case unwittingly admit the reality of the threat and the chill" posed by the Act and by Texas Right to Life's threatened enforcement of the Act (as well as by the ability for anyone else to enforce the Act). Texas Right to Life's ripeness challenge relies on its mischaracterization of the appellees' claims as dependent on appellees' violating the Act or suits being filed against them, but none of

24

appellees' claims requires the determination of factual matters that have not yet sufficiently developed. *Compare Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 268 (Tex. App.—Austin 2002, no pet.) (holding Beacon's claims against Texas Department of Insurance concerning abstract insurance contracts and hypothetical sets of facts were "premature attempt to arrest the administrative process"), *with City of Waco v. Texas Nat. Res. Conservation Comm'n*, 83 S.W.3d 169, 176-77 (Tex. App.—Austin 2002, pet. denied) (holding trial court had jurisdiction to hear City's UDJA claim that concerned "purely legal issue" of whether federal law prohibited state agency from issuing new permits in watershed until agency adopted necessary pollution-reduction measures; claim was ripe because purely legal question would not benefit from development of additional facts in connection with specific permit application). As Texas Right to Life has acknowledged, the appellees have already suffered a concrete injury. As stated above, the injury for which they seek relief is the allegedly unconstitutional Act's chilling effect on their day-to-day operations, activities, and professions because of the threat of litigation for violations or perceived violations. They seek an antisuit injunction against Texas Right to Life and a declaration that the Act is unconstitutional.

Our resolution of the appellees' claims and provision of relief for their injury does not require the determination of facts in the context of any individual lawsuit that might be brought by Texas Right to Life or anyone else. Therefore, we conclude that the appellees' claims are ripe.

## IV. Mootness

After the United States Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), overruling *Roe v. Wade*, 410 U.S. 113

(1973), and its progeny, Texas Right to Life filed a suggestion of mootness, which we construed as a motion to dismiss and denied when we issued our prior opinion. The Supreme Court's opinion in *Dobbs* had no effect on the Planned Parenthood and Van Stean appellees' claims for declaratory and injunctive relief from the civil enforcement scheme contained in SB 8. As the MDL court stated in its order, "*[T]his case is not about abortion; it is about civil procedure. It is about whether SB 8's civil procedures are constitutional.*" None of the subsequent developments in the law have eliminated the possibility that the Planned Parenthood and Van Stean appellees could be held liable for violations under the Act, and thus, their claims for declaratory and injunctive relief against Texas Right to Life remain live. Our reasoning on this issue was not addressed by the Texas Supreme Court in *Texas Right to Life II*, and it remains the same. Therefore, we conclude that appellees' claims are not moot.

Having concluded that the Planned Parenthood and Van Stean appellees have standing to bring their claims, those claims are ripe, and the claims have not become moot, we conclude the case is justiciable. Accordingly, we now turn to the merits of Texas Right to Life's TCPA motion to dismiss.

**Texas Right to Life's TCPA Motion to Dismiss**

**I.      Standard of Review**

We review de novo a trial court's ruling on a TCPA motion to dismiss, including whether each party has carried its respective burden under the TCPA. *See Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.) (stating that "[w]e review de novo whether each party carried its assigned burden"); *see also Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.]

26

2017, no pet.) ("We review de novo the denial of a TCPA motion to dismiss."). To determine whether the dismissal of a legal action is warranted, we "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the nonmovant. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

## II. TCPA's Purpose and Framework

The TCPA's purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). The Texas Legislature has mandated that the TCPA "shall be construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b). To accomplish the statute's purpose, the Legislature established "a motion-to-dismiss procedure that allows defendants who claim that a plaintiff has filed a meritless suit in response to the defendant's proper exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation." *Dolcefino*, 540 S.W.3d at 198 (citing Tex. Civ.

Prac. & Rem. Code § 27.003(a); *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 727 (Tex. App.—Dallas 2016, pet. denied)).

Our review of a trial court's ruling on a TCPA motion to dismiss requires a three-step analysis. *Youngkin*, 546 S.W.3d at 679 (describing three-step analysis under prior version of TCPA). As a threshold matter, the movant must demonstrate that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring movant to demonstrate that legal action "is based on or is in response to" its exercise of protected rights); *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). If the movant meets that burden, the nonmovant must establish by clear and specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* § 27.005(d).

## III.    Applicability of the TCPA to the Appellees' Claims

Texas Right to Life challenges the MDL court's denial of its TCPA motion in five issues, four of which concern whether the Planned Parenthood and Van Stean appellees satisfied their burden under the second step of the TCPA analysis. We do not reach those issues because the dispositive issue here is the applicability of the TCPA, the first step of the analysis.

Texas Right to Life bore the initial burden of demonstrating that the TCPA applied to the Planned Parenthood and Van Stean appellees' claims—that is, that the appellees' claims for declaratory and injunctive relief were "based on or . . . in response to . . . [the

28

movants'] exercise of : (A) the right of free speech; (B) the right to petition; or (C) the right of association . . . ." Tex. Civ. Prac. & Rem. Code § 27.005(b); *Lilith Fund*, 662 S.W.3d at 363.

Texas Right to Life contends that it satisfied this burden because the Planned Parenthood and Van Stean appellees' legal action is based on or in response to its exercise of all three rights. Texas Right to Life asserts that the appellees' legal action is "'based on' and 'in response to' [Texas Right to Life's] publication of a website that describes SB 8 and invites members of the public to submit evidence of statutory violations." Texas Right to Life argues that "the publication of a website that truthfully relates the content of SB 8 and encourages the public to submit evidence of wrongdoing" is an activity that is covered by the TCPA's broad definitions of the "exercise of the right of free speech," the "exercise of the right of petition," and the "exercise of the right of association." *See id.* §§ 27.001(3) (defining "exercise of the right of free speech"), .001(7)(C) (defining "matter of public concern"), .001(4) (defining "exercise of the right of petition"), .001(2) (defining "exercise of the right of association").

Specifically, Texas Right to Life urges that abortion and SB 8 are matters of public concern and that their efforts to provide the public with information about SB 8 and to solicit information from others about potential violations are "constitutionally protected communications." *See* Tex. Civ. Prac. & Rem. Code §27.001(7)(B), (C) (defining "[m]atter of public concern" as "(B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public"). It argues that the Planned Parenthood and Van Stean appellees sued it "in response to speech 'made in connection' with these matters of public concern." *See id.* § 27.001(3) (establishing that "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern"). Texas Right to Life contends that its communications also fall within the statutory definition of the exercise of the

29

right to petition because its "efforts to 'publiciz[e] the availability of private enforcement lawsuits under SB8' [as alleged by the appellees in their petition] are communications that are 'reasonably likely to encourage consideration or review of an issue by a . . . judicial, or other governmental body,'" *see id.* § 27.001(4)(C), and are also "reasonably likely to enlist public participation in an effort to effect consideration of an issue by a . . . judicial, or other governmental body," *see id.* § 27.001(4)(D). It further asserts that its joint conduct and expression as an organization of individuals and the organization's employee "who have 'joined together' to collectively promote the enforcement of Texas's abortion laws, including Senate Bill 8, and who lobby for the enactment of such laws," constitutes an "exercise of the right of association," as defined by the TCPA, and that the Planned Parenthood and Van Stean appellees' lawsuits "are in direct response to this joint conduct and expression." *See id.* § 27.001(2) (establishing that "'exercise of the right of association' means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern").

The Planned Parenthood and Van Stean appellees, on the other hand, assert that the TCPA does not apply to their claims. They contend that Texas Right to Life misconstrues the appellees' pleadings by characterizing them as seeking to inhibit Texas Right to Life and Seago's joint efforts to publicize SB 8, to operate a website that provides information about SB 8, and to support legislation such as SB 8. The appellees argue that their suits were filed to challenge the constitutionality of SB 8 and to enjoin Texas Right to Life from enforcing an unconstitutional statute, not to stop Texas Right to Life from any lawful activity that is protected by the TCPA. They assert that even if speech or political opinions are incidentally involved in

30

the underlying factual allegations in their petitions, "the TCPA offers no protection for an unlawful scheme to deprive others of their constitutional rights."

We agree that Texas Right to Life failed to satisfy its initial burden of demonstrating that the TCPA applies. Although the Planned Parenthood and Van Stean appellees' pleadings refer to Texas Right to Life's publication of a website that publicizes SB 8 and encourages members of the public to submit evidence of violations of SB 8 as factual background, the declarations and injunctive relief that the appellees seek do not implicate Texas Right to Life's exercise of the rights protected by the TCPA. *See Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at \*3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.). The appellees seek declarations that SB 8 violates the Texas Constitution and that their own conduct cannot be the basis for liability under that statute. *See Dolcefino*, 540 S.W.3d at 200 (holding that TCPA did not apply to claim for declaratory relief concerning nonmovant's own conduct, when nonmovant only sought judgment clarifying its duties and obligations in response to statutory request for information and did not seek to prohibit any conduct or speech by movant). The only conduct of Texas Right to Life that the appellees seek to permanently enjoin is any efforts to enforce SB 8 against them *if* SB 8 is declared unconstitutional.[9] *See Choudhri*, 2020 WL 4689204, at \*3 (holding that TCPA did not apply to claim seeking declaration of effect of parties' prior arbitration agreement on ongoing litigation and noting that nonmovant did not seek to prohibit movant from petitioning courts). In

---

[9] The Planned Parenthood appellees seek injunctive relief to restrain Texas Right to Life, "their agents, servants, employees, attorneys, and any persons in active concert or participation with them, from enforcing S.B. 8 in any way against Plaintiffs and staff." The Van Stean appellees that requested injunctive relief seek to restrain Texas Right to Life, its agents, and "any person or entity acting in concert with them, from instituting lawsuits against [them] pursuant to SB8."

31

other words, nothing in the appellees' petition seeks to directly limit Texas Right to Life's "constitutional rights. . . to petition, speak freely, associate freely, and otherwise participate in government *to the maximum extent permitted by law*." Tex. Civ. Prac. & Rem. Code § 27.002 (emphasis added).

Viewing the Planned Parenthood and Van Stean appellees' pleadings in the light most favorable to them, as we are required to do, we conclude that the trial court correctly determined that the appellees' claims are not based on or in response to Texas Right to Life's exercise of its constitutional rights (as those rights are defined by the TCPA). *See Choudhri*, 2020 WL 4689204, at *3. Taken in context and viewed as a whole, the Planned Parenthood and Van Stean appellees' claims are not based on or in response to Texas Right to Life's speech and conduct publicizing SB 8 and seeking citizen enforcement; their claims are based on and in response to the Legislature's enactment of SB 8. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) ("[T]he unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings."). They seek a determination of whether their own constitutional rights are violated by SB 8.

The plain language of the TCPA supports our conclusion that the trial court properly determined that the TCPA does not apply to the appellees' suit for declaratory and injunctive relief. As noted above, the TCPA's express purpose is not only "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law," but "at the same time, *[to] protect the rights of a person to file meritorious lawsuits for demonstrable injury*." Tex. Civ. Prac. & Rem. Code § 27.002 (emphasis added); *see also Dolcefino*, 540 S.W.3d at 200. In this case, because nothing in the Planned Parenthood and Van Stean appellees' petitions seeks

to directly limit any of Texas Right to Life's protected rights or to preclude it from otherwise participating in government to the maximum extent permitted by law, interpreting the TCPA as essentially forbidding the appellees from seeking a declaration of the constitutionality of SB 8 would "undermine the [Legislature's] clear directive that the TCPA 'does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions,' such as the Declaratory Judgment Act." *Dolcefino*, 540 S.W.3d at 200-01 (quoting Tex. Civ. Prac. & Rem. Code § 27.011).

Like the nonmovant in *Dolcefino*, the Planned Parenthood and Van Stean appellees seek relief under the UDJA, and their pleadings demonstrate that their suit "is the sort of lawsuit meant to be protected from dismissal under the TCPA." *Id.* at 201. "The UDJA generally permits a person whose rights, status, or other legal relations are affected by a statute or contract to obtain a declaration of the rights, status, or other legal relations thereunder." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 37.004(a)). The UDJA's purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code § 37.002(b).

Texas Right to Life argues that the MDL court erred by concluding that the Planned Parenthood and Van Stean appellees' legal actions were not "based on" or "in response to" Texas Right to Life's exercise of the rights protected by the TCPA.[10] It contends that "the

---

[10] Texas Right to Life also complains about the MDL court's wording in the order when it stated that "[i]t is clear that these cases are not 'based on' and do not 'respond to' [Texas Right to Life's] exercise of [its] First Amendment rights—[the appellees] have not sued [it] for that," and later in the order, that "there is no First Amendment right to encourage persons in Texas and across the United States to file suits to take money from other persons *by using an unconstitutional civil procedure.*" Texas Right to Life contends that this language means that the

relevant question is whether the content of [Texas Right to Life's] website falls within the statutory definitions provided in [S]ections 27.001(2)-(4)." Again similarly to the movant in *Dolcefino*, Texas Right to Life's "argument ignores the statutory requirement that there be a connection between the claims in the lawsuit and the alleged protected conduct." *Dolcefino*, 540 S.W.3d at 201 (citing prior version of TCPA Section 27.005(b)). As explained above, the relevant question is not whether the content of Texas Right to Life's website (and its conduct) satisfied the statutory definitions of the exercise of protected rights, it is whether the Planned Parenthood and Van Stean appellees sought relief that was based on or in response to Texas Right to Life's exercise of protected rights. Here, we conclude that Texas Right to Life has failed to draw a connection between its exercise of protected rights and the appellees' claims that is adequate to invoke the TCPA, especially given the Legislature's 2019 amendment to Section 27.005(b). *See Union Pac. R.R. v. Chenier*, 649 S.W.3d 440, 449 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (concluding that Legislature's removal of words "relate to" from Section 27.005(b) evinced its intention to limit TCPA's reach (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) ("We presume . . . that words not included were purposefully omitted.")); *see also Dolcefino*, 540 S.W.3d at 201. The TCPA's protections of Texas Right to Life's speech and conduct only extend to protect its rights "to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent

---

district court did not consider the statutory definitions for the rights protected by the TCPA. We disagree. We note that our review of the MDL court's decision is de novo. Moreover, the MDL court cited Section 27.002 of the TCPA, which lists the "constitutional rights" that the statute purports to protect, as well as the Texas Supreme Court's opinion in *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding), which also referred to the TCPA-protected rights as "First Amendment rights." There is no indication in the MDL court's opinion that it limited its analysis to anything less than the statutorily defined rights.

permitted by law." *See* Tex. Civ. Prac. & Rem. Code § 27.002. The TCPA does not allow Texas Right to Life "to bypass the protections accorded by the UDJA to anyone whose own rights are affected by a statute," like the appellees here who assert that they have rights that are affected by SB 8. *Dolcefino*, 540 S.W.3d at 201-02. We overrule Texas Right to Life's first issue.

Because we have concluded that the MDL court correctly decided that the TCPA does not apply to the Planned Parenthood and Van Stean appellees' claims, we need not address Texas Right to Life's remaining issues that concern whether the appellees produced clear and specific evidence of a prima facie case of each element of their claims. *See id.* at 202 (citing prior version of Tex. Civ. Prac. & Rem. Code Section 27.005(b); *Coleman*, 512 S.W.3d at 898 (discussing multi-step TCPA analysis)).

## CONCLUSION

We hold that the Planned Parenthood and Van Stean appellees have brought justiciable claims against Texas Right to Life. Because the TCPA does not apply to the Planned Parenthood and Van Stean appellees' claims, we affirm the trial court's denial of Texas Right to Life's motion to dismiss.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: January 16, 2026

35